**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| **GAIL RODRIGUES,** ) <br> ) <br>                    **Plaintiff** ) <br> ) <br>        v. ) <br> ) <br> **FRANK BISIGNANO, Acting Commissioner** ) <br> **of the Social Security Administration,** ) <br> ) <br>                    **Defendant.** ) | Case No. 24-cv-11975-DJC |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                                          **July 13, 2025**

**I.     Introduction**

Pursuant to the procedures set forth in the Social Security Act (the "Act"), 42 U.S.C. § 405(g), Plaintiff Gail Rodrigues ("Rodrigues") brings this action for judicial review of the final decision of Defendant Frank Bisignano, Commissioner of the Social Security Administration (the "Commissioner"),[1] issued by an Administrative Law Judge ("ALJ") on January 31, 2024, denying her application for social security disability insurance benefits ("SSDI") with the Social Security Administration ("SSA"). D. 1. Rodrigues has moved to reverse and remand the decision of the Commissioner, D. 9, and the Commissioner has moved to affirm the decision, D. 16. For the reasons stated below, the Court ALLOWS the Commissioner's motion to affirm, D. 16, and DENIES Rodrigues's motion to reverse, D. 9.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the Court substitutes Frank Bisignano, the current Commissioner, as Defendant here.

1

## II.    Legal Standards

### A.    Entitlement to Disability Benefits and Supplemental Security Income

To receive SSDI benefits, a claimant must demonstrate that he is disabled, as defined by the Act and corresponding regulations. 42 U.S.C. § 423(a). The Act and regulations define disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505. The impact of the disability must be so severe as to prevent a claimant from not only maintaining employment similar to previous work, but also from doing any substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505 - 404.1511.

The Commissioner must follow a five-step process to determine whether a claimant has a disability for Social Security purposes and, thus, whether to approve the claimant's application for benefits. 20 C.F.R. § 416.920(a). If at any step in the process the Commissioner finds the claimant to be disabled or not disabled, then the inquiry ends. Id. § 416.920(a)(4). First, if the claimant is engaged in any substantial gainful activity, then the claimant is not disabled. Id. § 416.920(a)(4)(i). Second, if the claimant does not have, or has not had during the relevant time period, a severe, medically determinable physical or mental impairment or combination of impairments, then the claimant is not disabled. Id. § 416.920(a)(4)(ii). Third, if the impairment(s) meets or is medically equal to the conditions for one of the "listed" impairments in the Social Security regulations (a "Listing"), then the claimant is disabled. Id. § 416.920(a)(4)(iii). Fourth, if the claimant's "residual functional capacity" ("RFC") shows that the claimant can still perform past relevant work, then the claimant is not disabled. Id. § 416.920(a)(4)(iv). Fifth and finally, if the claimant's RFC, education, work experience, and age show that the claimant is capable of any

2

other work in the national economy, then the claimant is not disabled. Id. § 416.920(a)(4)(v); see id. § 416.960(c).

### B. Standard of Review

This Court may affirm, modify or reverse the decision of the Commissioner upon review of the pleadings and the record. 42 U.S.C. § 405(g). Such review is limited to an evaluation of "whether there is substantial evidence to support the ALJ's fact findings and whether appropriate legal standards were employed." Jones v. Soc. Sec. Admin., 150 Fed. Appx. 1, 1-2 (1st Cir. 2005) (citing Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999)). Accordingly, the ALJ's findings of fact must be affirmed when supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion." Rodriguez v. Sec'y of Health & Hum. Servs., 647 F.2d 218, 222 (1st Cir. 1981) (citations omitted). A denial of relief will not be upheld, however, where there has been an error of law. See Manso-Pizarro v. Sec'y Health & Hum. Servs., 76 F.3d 15, 16 (1st Cir. 1996). The district court reviews questions of law *de novo*. Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001).

## III. Factual Background

### A. Procedural History

Rodrigues claims an inability to work since September 1, 2018. R. 19.[2] She was about fifty-five years old as of the alleged onset date ("AOD"). Id. at 207. Her date last insured ("DLI") is December 31, 2020. Id. at 21. Rodrigues applied for SSDI on July 9, 2022. Id. at 19. She alleges the following impairments: cirrhosis of the liver end stage, anemia, depression, anxiety and high blood pressure. Id. at 210. On January 31, 2024, after a hearing, the ALJ issued a written

---

[2] The administrative record, D. 8, shall be referenced as "R. [page number]."

decision concluding that Rodrigues was not disabled. Id. at 16, 20-26. Rodrigues appealed the decision to the Social Security's Appeal Council ("AC"), which denied the request for review, rendering the ALJ's decision the final decision of the Commissioner. Id. at 1. Rodrigues filed the instant lawsuit against the Commissioner, D. 1, and now moves this Court for an order reversing and remanding the Commissioner's final decision, D. 9. The Commissioner has moved for an order affirming same. D. 16.

B.     **Before the ALJ**

The record before the ALJ included the following: (1) testimony at the ALJ hearing, (2) Carrara's medical records, and (3) state agency expert disability assessments.

   *1.     Testimony at the ALJ Hearing*

Rodrigues testified before the ALJ on November 28, 2023. R. 33. Rodrigues testified that she struggled with depression and anxiety. Id. at 40. She also discussed her struggle with alcohol on or before the DLI and its impact on her health. Id. at 51. Rodrigues testified that she received the cirrhosis diagnosis around April 2022. Id. at 41. Rodrigues also testified that she suffered from skin rash dating back to 2020. Id. at 46. When asked whether she still suffers from it, Rodrigues responded that the issue has been resolved after medical appointments and medications. Id. Rodrigues further testified that she was prescribed a high dose of prednisone and was also taking hydroxyzine for her rash. Id.

Rodrigues also testified to the physical limitations imposed by the health issues mentioned. When asked why she could not perform any work on or before DLI, Rodrigues explained that her depression, anxiety and skin rash prevented her from working or leaving her home. Id. at 40. Rodrigues testified that prior to her cirrhosis diagnosis in 2022, she suffered from aches and pains and had difficulties walking which forced her to rely on a wheelchair and a walker for a time. Id. at 41. She also testified that she had difficulty performing basic functions like making breakfast

or showering and that that she could no longer work as a hairdresser because she had difficult standing or holding her arms up. Id. at 42-43. When asked whether her function report is correct that she could occasionally do laundry, drive a car, go shopping for food in stores once a week for maybe an hour, Rodrigues replied affirmatively. Id. at 47. She also confirmed when asked whether she could prepare her own meals, take personal care, and feed her dog. Id. When asked whether she was able to go out and do social things from 2018 to 2020, Rodrigues replied that she mostly stayed home but that she could still occasionally go out. Id. at 52.

The ALJ also took testimony from a vocational expert ("VE") Zachary Fosberg ("Fosberg"). Id. at 56. Fosberg classified Rodrigues's job as "hair stylist." Id. at 57. The ALJ asked a series of hypothetical to gauge whether an individual with similar limitations comparable to Rodrigues could perform her past work and whether there are other jobs in the national economy that could be performed by such an individual. Id. at 57-58. For the first hypothetical, the ALJ asked whether a person can work as a hair stylist if he or she is able to lift and/or carry twenty pounds occasionally, ten pounds frequently, is able to stand and/or walk for six hours in an eight-hour work day over a forty hour work week, is able to sit for six hours in same condition, and is able to occasionally able to climb stairs and ramps but not ropes, ladders or scaffolds, and would have to avoid exposure to pulmonary irritants. Id. at 57. Fosberg replied that this individual could work as a hair stylist. Id. In the second hypothetical, the ALJ asked whether an individual can maintain his or her job as hair stylist if in addition to these limitations, he or she would be absent from work two days a month on a regular basis. Id. Fosberg stated that this person would not be able to maintain the same work. Id. at 57. Lastly, in the third hypothetical, the ALJ asked whether an individual with the same profile in the first hypothetical could perform any job in the regional or national economy if he or she would be off-task for fifteen percent of a normal workday on a

regular and sustained basis.  Id. at 58.  Fosberg replied that such "amount of time off-task would also preclude" that individual's "ability to maintain competitive employment."  Id.

### 2. Rodrigues's Medical Records

In addition to Rodrigues's testimony, the ALJ also considered her medical records.[3]  In 2017, Rodrigues was admitted to the Mirian Hospital in October and in December for alcohol withdrawal.  Id. at 981, 999.  Rodrigues began seeing Dr. Muhammad Akhtar ("Dr. Akhtar"), her primary treating physician on the record, that same year.  Id. at 315.  On July 10, 2018, Dr. Akhtar included in Rodrigues's diagnoses, among other things, depression, anxiety, transaminitis, hemochromatosis, asthma, alcoholism, and gastroesophageal reflux diseases ("GERD") but noted that her physical exam was normal.  Id. at 318-19.  The same health issues were reported in her visit with Dr. Akhtar on February 6, 2020.  Id. at 321.  On September 14, 2020, Dr. Akhtar noted that "[f]or the last [twelve] days [Rodrigues] has had a rash on her upper extremities and to some extent to both eyes."  Id. at 327.  He further noted that "for the last [one] week it has become quite itchy" and remarked that "[s]he was evaluated . . . and was prescribed prednisone 10 mg a day with mupirocin cream . . . without any effect."  Id.  He further observed that Rodrigues experienced weight and hair loss.  Id.  On September 22, 2020, Dr. Akhtar described Rodrigues's rash as having "started on her upper extremities and to some extent to both legs."  Id.  at 329.  He also noted that Rodrigues described the rash as "extremely itchy" and that the itching was "driving her crazy."  Id.  Dr. Akhtar further noted that she had begun taking hydroxyzine with some effect "in reducing itching."  Id.  On October 22, 2020, Dr. Akhtar remarked that Rodrigues had been seeing a dermatologist for her skin rash and that she had been started on high-dose prednisone.  Id. at 333.

---

[3] The Court focuses on the medical records discussed in the ALJ's decision, which include records from 2017 through the July 31, 2022 visit with Dr. Akhtar as these are most pertinent to the issues raised in Rodrigues's motion to reverse and remand.  D. 12 at 9-16.

He further noted that Rodrigues had been feeling "anxious and emotional" and observed that she had a "moon face." Id. at 333, 335. Dr. Akhtar further mentioned that Rodrigues's rash appeared to be receding. Id. at 333.

On February 18, 2021, Dr. Akhtar noted that Rodrigues complained that she "has lost [fifteen] more [pounds]" and that she "also lost her hair." Id. at 338. He remarked that she had not been compliant with preventative care. Id. Dr. Akhtar further observed that Rodrigues was "cachectic looking." Id. at 340. On July 31, 2022, Dr. Akhtar conducted a functional assessment for Rodrigues. Id. at 1010-13. He diagnosed her with hepatitis cirrhosis, alcohol use disorder and hypertension. Id. at 1010. He opined that she could stand/walk up to two hours a day in an eight hour work day, and sit for the same amount of time. Id. at 1011. He further noted that she could lift less than ten pounds occasionally but never lift ten or more pounds. Id. Dr. Akhtar also noted that Rodrigues has significant limitations with reaching, handling or fingering. Id. at 1012. He further observed that Rodrigues is limited in her ability to grasp, turn, twist objects, fine manipulation and reaching. Id. As to her mental limitations, Dr. Akhtar stated that Rodrigues suffered from depression and anxiety and that she is "incapable of even 'low stress' job." Id. Lastly, Dr. Akhtar indicated that his assessment does not apply to Rodrigues's functioning prior to March 9, 2022. Id. at 1013.

### 3.     State Agency Disability Assessments

The ALJ also considered state agency expert assessments of Rodrigues's functional limits. The state agency expert assessments consisted of two set of examiners, one for Rodrigues's initial application request and one for her reconsideration request. Rodrigues was evaluated for both physical and psychological impairments. As to physical limitations, the initial examination was completed by Dr. Wayne Draper ("Draper") who concluded that Rodrigues did not have a severe medically determinable impairment as of the DLI. Id. at 62-63. At the reconsideration level, the

medical consultant, Malin Weeratne ("Weeratne"), likewise concluded that "[t]here is no evidence that [Rodrigues] had a disabling physical impairment prior to DLI." Id. at 68. As to mental limitations, the initial psychological assessment was conducted by Mary Ford-Clark ("Ford-Clark") who concluded that "there is insufficient psych evidence to adjudicate" the claim. Id. at 63. At the reconsideration level, psychological consultant Susan Witkie ("Witkie"), likewise concluded that "[i]t remains IE [(insufficient evidence)] from 9/2018 to 12/2020." Id. at 69.

### C. The ALJ's Decision

Following the five-step process to evaluate whether a claimant is disabled, 20 C.F.R. § 416.920, at step one, the ALJ found that Rodrigues has not engaged in substantial gainful activity since her AOD of September 1, 2018 through her DLI of December 31, 2020. Id. at 21. At step two, the ALJ found that Rodrigues has the following medically determinable impairments: asthma, alcohol abuse disorder, depressive disorder, anxiety disorder, hypertension, skin rash, and GERD. Id. The ALJ, however, determined that Rodrigues did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for twelve consecutive months through the DLI. Id. Accordingly, the ALJ concluded that Rodrigues did not have a severe impairment or combination of impairments and, therefore, failed to satisfy her burden at step two. Id. at 21, 25.

### IV. Discussion

Rodrigues argues that the ALJ's severity determination at step two is unsupported by substantial evidence. Specifically, Rodrigues argues (1) that the ALJ applied a higher standard than the *de minimis* standard for assessing severity at step two; (2) that the ALJ failed to consider the medical records in its totality; (3) that the ALJ "both misinterprets the plain language of the state agency opinion evidence and misapplies relevant regulation by considering statements reserved to the Commissioner" and (4) that the ALJ disregarded an important treating source

opinion "which the ALJ directly admits has at least some potential objective support during the relevant period." D. 12 at 9.

### A.     The ALJ's Did Not Apply the Incorrect Standard at Step Two

"At step two of the disability evaluation process, 'the claimant has the burden of proving, through objective medical evidence, that her impairments are severe.'" Rascoe v. Comm'r of Soc. Sec., 103 F. Supp. 3d 169, 182 (D. Mass. 2015) (quoting Teves v. McMahon, 472 F. Supp. 2d 82, 86 (D. Mass. 2007)). "A claim may be denied at step two only if the 'the medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual ability to work even if the individual's age, education, or work experience were specifically considered . . .'" Id. (alteration in original) (quoting SSR 85–28, 1985 WL 56856, at *3 (S.S.A. 1985)). "Accordingly, the severity requirement is nothing more than 'a *de minimis* policy, designed to do no more than screen out groundless claims.'" Id. (quoting McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1124 (1st Cir. 1986)).

Rodrigues contends that despite finding that "there is objective evidentiary support for her allegations" concerning the severity of her impairments, the ALJ "applie[d] a higher standard nonetheless for no apparent, articulated, or legally-sound reason." D. 12 at 10. Rodrigues's sole support for this argument comes from a portion of the decision in which the ALJ noted that "[t]he objective evidence provides little support to the claimant's allegations prior to the date last insured of December 31, 2020." Id. (quoting R. 23).[4] Rodrigues asserts that the ALJ's use of the phrase

---

[4] Additionally, Rodrigues also argues here that the ALJ erroneously misinterpreted the state agency consultant's opinion regarding Rodrigues's mental impairments to conclude that these impairments are not sufficiently severe. D. 12 at 10. Since the Court discusses this issue in greater detail in a later section, the Court does not address it here.

"little support" rather than "no support" amounts to a concession that there is at least some evidentiary support for a finding that Rodrigues has a severe impairment at step two. Id.

But this argument turns on little more than "semantic or phraseology." Albro v. O'Malley, 740 F. Supp. 3d 26, 37 (D. Mass. 2024). Contrary to Rodrigues's assertion, the ALJ firmly held that the medical evidence on the record "does not support the elevated level of impairment alleged" during the relevant period and thoroughly explained his reasoning as he examined the record. R. 23. For example, the ALJ noted that while Rodrigues "has a history of asthma, GERD, and controlled hypertension . . . there is [] no evidence of similar abnormalities during the period at issue." Id. He likewise noted that the state agency consultants had assessed that Rodrigues "had no severe physical or mental impairments. Id. at 24. Accordingly, the Court denies the motion to reverse on this ground.

### B.    The ALJ Did Not Fail to Consider the Totality of the Record

Rodrigues argues that the ALJ has "failed to properly consider the full record" during the relevant period because "the ALJ's analysis fails to consider any medical evidence of record dated after the December 31, 2020 DLI." D. 12 at 10. As an initial matter, this assertion is unsupported given that the ALJ both discussed post-DLI records and included them in the list of exhibits, R. 23, 24, 30; see Chapman v. Colvin, 16-cv-00231-JDL, 2016 WL 7441609, at *3 (D. Me. 2016) (stating that "the inclusion of" a piece of evidence "in the List of Exhibits is adequate evidence that the [ALJ] considered it"). Specifically, the ALJ discussed medical records from Rodrigues's visits with Dr. Akhtar on February 18, 2021 and July 31, 2022. R. 23-24. In addressing her February 18, 2021 record, the ALJ noted that Rodrigues was "noncompliant with preventative care" and that the exam "showed rash but was otherwise unremarkable." Id. at 23. The ALJ then discussed Dr. Akhtar's functional assessment in the July 31, 2022 visit but declined to assign significant evidentiary weight to this assessment both because Dr. Akhtar indicated in the

10

assessment that it is inapplicable to the period prior to March 2022 and because it is not well supported by evidence on the record.  Id. at 24.

Even assuming *arguendo* that the ALJ did not address post-DLI medical records, there is still no basis to reverse his decision.  To be eligible for benefits, a claimant must "demonstrate that her disability existed prior to her DLI."  Fischer v. Colvin, 831 F.3d 31, 32 (1st Cir. 2016).  Thus, for the purposes of assessing a claim, an ALJ needs only to consider and address medical evidence relevant to allegations of disability from the AOD through the DLI.  See Resendes v. Astrue, 780 F. Supp. 2d 125, 140 (D. Mass. 2011) (citations omitted).  "When the evidence 'lacks precision and focus in light of the narrow relevant time period,' an ALJ may use evidence from the surrounding time periods to draw conclusions regarding the relevant time period."  Id. (quoting Carrillo Marin v. Sec'y of Health & Hum. Servs., 758 F.2d 14, 16 (1st Cir. 1985)).  There is, however, no legal authority requiring same.[5]  Accordingly, to the extent Rodrigues is arguing that the ALJ must consider post-DLI evidence, the argument must fail.

Alternatively, Rodrigues argues that the ALJ's discussion of both the pre- and post-DLI records is inadequate because the decision "showed such omissions and distortions [of the record] that it is impossible to conclude that the ALJ properly reviewed it."  D. 12 at 11.  Specifically, Rodrigues argues that the ALJ has failed to consider the limiting impairments allegedly caused by the side effects of prednisone, which she asserts is clear from both pre- and post-DLI records.  Id.

---

[5] The sole authority Rodrigues cites here is Arrington v. Colvin, 216 F. Supp. 3d 217, 231 (D. Mass. 2016).  There, the plaintiff argued that the ALJ had failed to consider evidence created after the DLI.  Id. at 231-32.  The court there held that this argument was not supported by the record given that the ALJ "did consider all of the evidence of record, including evidence that was created after [the DLI]."  Id.  The court went on to affirm, as this Court has done above, that an ALJ may consider evidence from time periods surrounding the DLI "[w]here . . . the time period at issue is narrow."  Id. (emphasis added) (quoting Resendes, 780 F. Supp. 2d at 140).  Nothing in this case can be construed to require the ALJ to do the same.

at 11-13. As discussed, the ALJ's finding of facts "if supported by substantial evidence, shall be conclusive." Rodriguez, 647 F.2d at 222 (citations omitted). This means that "[a]bsent a material error . . . the Court defers to an ALJ's weighing of the evidence, which is the core duty of an ALJ." Cathyjean M. v. Kijakazi, No. 22-cv-00289-LEW, 2023 WL 6937466, at *1 (D. Me. Oct. 20, 2023) (citing Rodriguez, 647 F.2d at 222), report and recommendation adopted, No. 22-cv-00289-LEW, 2024 WL 308675 (D. Me. Jan. 26, 2024).

Here, in support of her argument, Rodrigues points to different portions of her medical records, particularly Dr. Akhtar's observations from the October 1, 2020 visit that Rodrigues was "anxious and emotional" and that she had a "moon face" and from the February 18, 2021 visit that she was experiencing weight loss and that she appeared "cachectic." Id. at 11-12 (citing R. 335, 340).[6] She asserts that these observations show that she was suffering from prednisone side effects. Id. at 13. Neither Dr. Akhtar nor the state agency medical consultants, however, provided such opinions. See R. 61-62, 68, 335, 340-41. Indeed, Rodrigues did not testify to having suffered any side effects from prednisone use at her hearing. R. 46 (stating that she was prescribed prednisone and that her rash was receding but did not discuss any side effects resulting from the medication). To the extent that Rodrigues is arguing that the ALJ should have considered and discussed the

---

[6] Rodrigues also contends that the ALJ's statement that the February 18, 2021 exam "showed rash but was otherwise unremarkable" is erroneous because "'skin rash' is not part of the exam" but is part of the "Review of Systems" section. D. 12 at 11 (emphasis omitted) (citing R. 339-40). Rodrigues argues that "[t]he physical exam, in fact, reads "Skin Normal skin exam." Id. (emphasis omitted) (citing R. 340). Rodrigues then claims that the ALJ's representation of the exam indicates that he "did not review the physical exam yet purported to do so" and urges the Court to remand this case to allow for a "proper and studious review of the record." Id. Having reviewed the record, R. 339-40, and the ALJ's decision, id. at 23, the ALJ's statement appears to accurately reflects Dr. Akhtar's overall assessment at this visit, namely, that Rodrigues reportedly experienced skin rash but that her physical exam did not show any skin abnormalities. Even assuming *arguendo* there is a mistake in how the ALJ represented this record, Rodrigues has failed to show how this mistake is a material error warranting reversal. Accordingly, the Court denies the motion to reverse on this ground.

12

alleged prednisone side effects notwithstanding the lack of any opinions on same because "[l]ong-term use of prednisone comes with well-known risks," D. 12 at 12, that argument cannot prevail given that "an ALJ, as a lay person, is not qualified to interpret raw data in a medical record," Perry v. Astrue, No. 11-cv-40215-TSH, 2014 WL 4965910, at *5 (D. Mass. Sept. 30, 2014) (quoting Manso-Pizarro, 76 F.3d at 17). Accordingly, Rodrigues has failed to show that the ALJ has committed a material error warranting reversal here.

Because the ALJ has considered the full record and given that Rodrigues has failed to show any material error in the ALJ's assessment of same, the Court denies the motion to reverse on this ground.

### C.     The ALJ Has Properly Assessed the State Agency Consultant Findings

Next, Rodrigues contends that the ALJ's assessment of the state agency consultants' opinions was inappropriate. First, Rodrigues argues that the ALJ mischaracterized the psychological consultants' opinions by stating that the consultants had found that Rodrigues does not suffer from a severe mental impairment. D. 12 at 14 (citing R. 24). At the initial level of the disability determination, Ford-Clark stated that there was insufficient psychological evidence to adjudicate the claim. R. 63. Witkie stated the same at the reconsideration level. R. 69. Thus, Rodrigues is technically correct that neither consultant had explicitly opined that Rodrigues does not have a severe mental illness. Nevertheless, because the burden is on Rodrigues to produce sufficient evidence to prove that her mental health conditions are severe under step two, see Rascoe, 103 F. Supp. 3d at 182 (quoting Teves, 472 F. Supp. 2d at 86), the ALJ is permitted to conclude that Rodrigues does not have a severe mental impairment where, as here, the psychological consultants have opined that the evidence on the record is insufficient to support same.

13

Rodrigues next contends that the ALJ's reliance upon the opinions of non-examining physical medical consultants, Draper and Weeratne, that Rodrigues does not have a severe or disabling impairment prior to DLI was erroneous pursuant to 20 C.F.R. § 404.1520b(c). D. 12 at 14-15. The regulation classifies certain evidence as "inherently neither valuable nor persuasive" for which the ALJ "will not provide any analysis" about how he or she "considered such evidence in [his or her] determination or decision." 20 C.F.R. § 404.1520b(c). Among the categories listed is a class of evidence referred to as "[s]tatements on issues reserved to the Commissioner," which includes "[s]tatements about whether or not [the claimant] ha[s] a severe impairment(s). Id. § 404.1520b(c)(3)(ii). As argued, because Draper and Weeratne's non-severity findings are "statements on issues reserved to the Commissioner," the ALJ's reliance on them violates the regulation. D. 12 at 14-15.

Courts in this circuit have declined to adopt Rodrigues's reasoning. See Bagdasarian v. O'Malley, No. 23-cv-10123-IT, 2024 WL 3430563, at *19-20 (D. Mass. Jan. 29, 2024), report and recommendation adopted, No. 23-cv-10123-IT, 2024 WL 3430565 (D. Mass. Feb. 27, 2024); Elizabeth L. v. Kijakazi, No. 23-cv-00008-WES, 2023 WL 5035123, at *8 (D.R.I. Aug. 8, 2023). Elizabeth L. is particularly persuasive. There, the court similarly rejected the plaintiff's assertion that the state agency consultants' non-severity findings are "statements on issues reserved to the Commissioner" and therefore cannot be considered pursuant to 20 C.F.R. § 404.1520b(c)(3)(ii). Elizabeth L., 2023 WL 5035123, at * 7-8. In so holding, the court noted that the current regulations recognize two categories of evidence: prior administrative medical findings, which ALJs must consider and articulate their consideration, and separately "statements on issues reserved to the Commissioner" for which the ALJ may not provide any analysis about how such evidence was considered. Id. at *8 (citing 20 C.F.R. §§ 404.1520c(b), 404.1520b(c)). The court concluded that

14

the state agency consultants' non-severity findings belong in the former category and held that "[b]ecause the [r]egulations identify prior administrative medical findings as a separate category of evidence and set forth how an ALJ must consider them and articulate such consideration, [the] [p]laintiff's argument that such findings should not be considered and are inherently neither valuable nor persuasive is simply unsupported by a plain reading of the [r]egulations as whole." Id. For the same reason, the ALJ did not err in relying upon Draper and Weeratne's non-severity findings and the Court denies the motion to reverse on this ground.

### D.  There was No Improper Consideration of Dr. Akhtar's July 31, 2022 Functional Assessment

Lastly, Rodrigues argues that the ALJ erred in disregarding Dr. Akhtar's functional assessment which was completed on July 31, 2022. D. 12 at 15.[7] In particular, Rodrigues contends that the ALJ's conclusion that the opinion "did not apply to the claimant's functioning prior to March 2022" was erroneous. Id. at 16. To support this argument, Rodrigues once again points to Dr. Akhtar's observation from February 18, 2021 that she was "cachectic looking," and asserts that this observation was "consistent with muscle wasting or muscle loss," which in turn can be traced to her prednisone use before the DLI. Id. But neither Dr. Akhtar nor the state agency consultants had provided such an opinion and there are no discussions of prednisone side-effects anywhere in either the medical records or in Rodrigues's testimony. Thus, there is no basis for the

---

[7] Rodrigues additionally asserts that the ALJ erroneously applied 20 C.F.R. § 404.1520b(c) to Dr. Akhtar's opinion. D. 12 at 15. In the opinion, the ALJ noted that "the conclusion that the claimant is unable to work is an issue reserved to the commissioner and not a medical opinion as specified in the regulations." R. 24. Courts in this circuit have held that treating physician opinions concerning the claimant's ability to work and other physical limitations are statements reserved to the Commissioner and to which 20 C.F.R. § 404.1520b(c) applies. See Stephen A. v. O'Malley, No. 24-cv-124-JJM-PAS, 2024 WL 4542148, at *5 (D.R.I. Oct. 22, 2024); Amanda B. v. Kijakazi, No. 21-cv-308MSM, 2022 WL 3025752, at *6 (D.R.I. Aug. 1, 2022), report and recommendation adopted, No. 21-cv-00308-MSM-PAS, 2022 WL 18910865 (D.R.I. Nov. 7, 2022). Accordingly, the ALJ did not commit an error in making the same conclusion here.

ALJ to have made such an assessment and indeed it would have been inappropriate for the ALJ to do so as he is unqualified to interpret medical data or provide a medical opinion. See Perry, 2014 WL 4965910, at *5 (quoting Manso-Pizarro, 76 F.3d at 17). Accordingly, the Court denies the motion to reverse on this ground.

## V.     Conclusion

For the reasons stated, Rodrigues's motion to reverse and remand, D. 9, is DENIED, and the Commissioner's motion to affirm, D. 16, is ALLOWED.

**So Ordered.**

/s Denise J. Casper
United States District Judge